Good afternoon. Pat Harris on behalf of defendant appellant Michael Ramirez. This is an issue about ineffective assistance of counsel. In denying Michael Ramirez's motion for a new trial based upon the ineffective assistance of counsel, Judge Lawrence O'Neill in Fresno opined that the attorney, Eric Chase, may have not performed quite up to standard in the pre-trial portion of the trial. And in fact, after hearing his testimony, I generously called his testimony faulty recollection perhaps and poor disorganization. But in the end, Judge O'Neill determined that during the trial itself, Mr. Chase was a, I believe he used the word, strong advocate and he paid attention. Judge O'Neill's ruling raises an interesting question and the one we're here on today. Can an attorney admittedly not perform investigation, admittedly not prepare witnesses, and admittedly not put together a cohesive defense prior to trial, but if they go into trial and perform at a competent level at the trial itself, can they then basically insulate themselves from an IAC claim? Or in the alternative, can they go in, perform even poorly, and if the evidence is overwhelming enough, they're basically relieved of an IAC claim? I think our answer in this case is a resounding no. And the reason is quite simple. To begin with, in order for an attorney to go into court and prepare a trial and say that their performance at trial was fine, it overlooks the fact of what we don't know could have been presented at trial. For example, it's easy for a judge to say he came in, he did well on cross-examination, he did well on the argument. But if in fact the judge didn't know that there was an alibi witness out there that would have backed up a claim, how can the judge know he's performing well at trial? Or if there is an alternative defense that the attorney has failed to actually explore, how can the judge know, no one can know, whether or not he's performed well at trial? And that's exactly what happened in this case. In this case, the attorney failed to call crucial alibi witness, he failed to explore alternative defenses, and in essence, he was ineffective. The court saw him put on a show in the courtroom. And by all accounts, he was contentious, he got up on cross-examination, yelled, and put on a fervent defense in terms of questioning. He was, at the closing argument, he was adamant about his client's innocence. But we don't, what happened was, there was a number of things that were not brought into this trial that proved his ineffectiveness. So just because he came to a trial and seemed to the court to be putting on something adequate makes it far from an effective case. I would point specifically to a couple of things. First, the prosecution in this case has referred repeatedly to the large amount of evidence that regardless of his effectiveness, there was a mountain of evidence. What there was a mountain of evidence was, was that there was child pornography in a hard drive in Michael Ramirez's home. There was a lot of evidence presented, there were witnesses of that, repeatedly government, and even some from the defense itself. What was not presented, and what was not proven, was that it was Michael Ramirez who accessed it. In fact, given a fair trial, given an effective trial, what would have happened here is the evidence would have shown that there was more evidence to show that his brother, Ricky, was the one accessing the computer, repeatedly. And in fact, just to give you a couple of examples, the testimony was from the ICE agents, that when they, in order to find out about this child pornography, they discovered not one, but two IP addresses at that residence. What that means is there were two separate computers accessing this child pornography. What we know about is we know that Michael Ramirez had a computer in his bedroom where he slept alone, and that Ricky Ramirez had a computer in his bedroom where he slept with his younger brother. We know from the testimony that Ricky Ramirez used both computers. There was no testimony that in fact Michael ever used Ricky's computer. But yet we know the two IP addresses came up showing child pornography. Mr. Chase never even brought that up to the jury, a piece of evidence that would have overwhelmingly, we believe, created reasonable doubt in itself to show that the other computer, Ricky Ramirez's computer, was in fact accessing child pornography. That was never brought up. Secondly, much was made of the fact, in fact, the only evidence of access that showed Michael Ramirez was ever on his computer allegedly viewing child pornography is what they call the snapshot of January 17th, where they were able to show at this particular time period, I believe it was 11 or 12 o'clock at night, that there was somebody on his computer accessing child pornography. There was testimony thrown out by the brother that in fact Michael, who worked for the brother, Noah, and he often worked late hours, often worked till midnight, sometimes even 24 hours. That was in fact never backed up and was ridiculed correctly by the AUSA. She got up in closing and said, what contractor do you know that possibly works till midnight? This is something they did very frequently. They had a witness, a Mr. Dunn, who they had worked for, who was willing and able, and we provided a declaration for in the motion, to say that on repeated occasions they worked till midnight and often worked even 24-hour cycles. The attorney was given his name, failed to call him. And in fact, if the motion for new trial said, oh, I expected the brother to get a hold of him. It's not the brother's job. The brother doesn't even know if he's planning on calling him. He gave him the name, gave him the information. He refused to do it. But I understand, based on the evidence, that, first of all, counsel was not told about Mr. Dunn until trial? That's not correct, no. Where is the evidence that he was told prior to trial? That counsel was? Yes. It was actually in the declaration, I believe, Your Honor. And there was a statement from and testimony from Mr. Ramirez that he told Noah Ramirez specifically. Did Noah even mention Mr. Dunn at trial? I don't know that he mentioned him at trial by name. I believe, if I recall, he mentioned him as a person, but I don't know that he mentioned his name, and honestly, I don't recall if he did at trial. I know he did not mention it by name. As I understand, the first time we really know much about this is the motion for the new trial. We would dispute that. I believe Noah Ramirez's testimony was that he, in fact, told counsel about Mr. Dunn prior to that, and counsel's response, which I believe he may have even testified to, was that, no, I'll take that back, Noah's response was that he was told, you get a hold of him. Was there any testimony in the record that Mr. Dunn could state with particularity when the defendant had worked? Let me be very clear on that, just so the Court is clear. The date in question was January 17th. The testimony would not have been that he was working on January 17th for Mr. Dunn. The testimony was Ms. Alberto, and as I said very skillfully, got up and basically in cross-examination made fun of the fact that they were working late hours, that they would ever work those kind of hours, because on January 17th, they claimed they were working until those hours on another project. What Mr. Dunn would have done is verify that, in fact, that is how they worked, that they often worked 12, 14, 16-hour days, and that's what his testimony. Just so the Court is clear, Mr. Dunn was not coming to testify that he was there on January 17th. Well, he doesn't say 16-hour days. He says that many hours or into the evening and one time overnight. I believe they said, yes, 1.24 hours. That's correct. There is also the issue, which was... Counsel? Counsel? Judge Fletcher has a question. What do we make of the fact that he was drawing unemployment compensation at the same time? I believe that Noah Ramirez testified. Noah Ramirez was, in fact, the owner of the company, hired his brother Michael, and I believe that Noah Ramirez did, in fact, testify at the fact he was working full days. So I do believe he did admit that at trial. There is also the issue of the confession, which clearly would play a large role in any kind of a trial. We, in this particular case, there was an agent, Prado, who was accused both in a suppression motion and also it was mentioned at trial that he essentially coerced the confession. As it turned out, the attorney did not do any research on that at all, claimed that he had... Mr. Ramirez, again, Noah Ramirez, had to go out, find out different people Mr. Prado had investigated, turned over those names and the attorneys to the lawyer who claimed that his attorneys at his office called these people and got no responses from them. That was proven at the motion for new trial to be incorrect because they said they did it in November and we were able to show that, in fact, they weren't even provided the list until the end of December. So that was falsified at the motion for new trial. Interestingly, and I think very importantly, yesterday we provided this court with a document. I don't know if the court's had a chance to see it. We received yesterday morning, I believe it was faxed the day before, from Ms. Alberto, a new piece of discovery that had to do with Agent Prado and the fact that Agent Prado, a letter was written, an anonymous letter was written that apparently detailed a number of indiscretions he had made and these indiscretions included, were very similar to what Mr. Ramirez had alleged in his motion for suppression of confession, specifically that he yelled at people, cursed at them, lied about different things in his paperwork, very much similar to what Mr. Ramirez had stated. It seems clear from this letter that it was an insider who wrote it. It wasn't just an anonymous letter from somebody who was outside, but somebody who actually worked with Agent Prado wrote this. Unfortunately, about 90 percent of it, maybe 95 percent of it, has been redacted. We don't know why, but it was redacted and we are unable to know exactly the entire circumstances of what it says. We feel that is extremely important and should be investigated because it goes right to the heart and it should have been investigated by, obviously, the attorney in this case, but it goes to the heart of this as well. And just so we're clear... Counselor, do we know when that was mailed or delivered? Yes, apparently it was sent in October of this year, October 29th. It was given to the ICE Internal Affairs. And so I'm clear, the U.S. attorney did not have it until last week. She provided it to us as soon as she got it, which was about a week ago. She provided it to us two days ago. We actually got it faxed to us yesterday morning. So we're not alleging that there was any kind of violation by the United States attorney. However, the letter refers to incidents or at least refers back to 2006, 2007, in Agent Prado and behaviors that were very similar to what occurred with Mr. Ramirez in his confession. Yes, we received it and we have your motion under consideration. Okay. So at the very... You have about two and a half minutes left. And I would like to reserve that for a moment. Very good. Thank you. May it please the Court. I'm Sheila Oberto on behalf of the United States. In this case, there was no deficient performance, nor was there any prejudice. Mr. Chase specifically communicated with the Ramirez family. He communicated plea offers, which were rejected. He met with the Ramirez family on numerous or a couple of occasions. He had numerous phone calls with both Noah Ramirez and Michael Ramirez to discuss the case. In addition, there was significant pretrial investigation in this case. Mr. Chase and his associates worked on the case. He retained not one but two experts to review the computer evidence in this case, which was crucial. And he filed a motion to suppress the defendant's confession. And he also asked for work records to corroborate the Noah's position that his brother worked with him on these various days and on many work hours. And he never got that information. He also, as the Court correctly noted, mounted a vigorous defense at trial. He cross-examined witnesses. He put on a case. And he had Noah and Michael Ramirez both testify as to the long work hours that the defendant worked with Noah. So there's no deficient performance in this case. In addition, there's no prejudice because there's been no showing what exculpatory evidence would have been uncovered by further pretrial investigation. And I would submit, Your Honor, that in this case, counsel is merely speculating that there is evidence out there that would have exonerated or that would have been exculpatory. That evidence could have been produced during the course of the motion for new trial. It was not produced. The only thing that was produced was Mr. Dunn's declaration, which, as the Court correctly pointed out, Mr. Dunn's declaration, the clarifying declaration says, I actually didn't have any work records for the time and period. I gave him cell phone information, and he said the cell phone records didn't reflect conversations during those periods. So Mr. Dunn's evidence would not have helped, nor was Mr. Dunn's available. He could have come to the motion for new trial hearing and testified if, in fact, they had worked long hours during the course of the time period, which, by the way, was August of 2006 through January of 2007. That was the time period when we alleged that the defendant downloaded child pornography, received and possessed child pornography. In addition, Your Honor, if even if the defendant had pointed out to evidence that would have helped him at the trial, there was overwhelming evidence of guilt in this case. In addition to his confession, in addition to his confession, there was computer evidence that corroborated the fact that it was the defendant who downloaded the child pornography, who received and possessed the child pornography. First of all, he's a registered owner of the computer. He excessively used the computer to send e-mails. By contrast, his brother's account had never even been used on that computer. In addition, there were 219 videos and 80 images of child pornography on the external hard drive. And counsel is correct. That external hard drive can be plugged and unplugged and transported somewhere else. But what's crucial here is that images that were on the external hard drive, videos on the external hard drive, had been viewed on the defendant's computer using the RealPlayer program. So the defendant not only stored child pornography on the external hard drive, he also viewed the child pornography on his computer. By contrast, when the agent looked at the defendant's brother's computer, Ricky Ramirez's computer, there was no child pornography. The forensic preview did not show any evidence of child pornography on that computer. He had a file deletion program, permanent filing, a file deletion program on his computer, and there was a snapshot of activity that showed that his e-mail address has been used. He used his e-mail address. He accessed the insurance website shortly before accessing child pornography on a particular date. In addition, the computers in his room, the external hard drives in his room, and his computer has no evidence of child pornography. I'd like to quickly also address a couple of issues that counsel raised. First of all, with respect to the two IP addresses, the Court has our supplemental briefing. The two IP addresses do not show that child pornography was downloaded on two separate computers, because as we indicated, as the filing clarifies or explains, this was a dynamic IP address. It changed each time the person signs on and off on the computer. So that IP address was accessed on 8508 and again on 8807 and 8807. Now, when that IP address is accessed, the IP address changes, but that doesn't mean there's another computer that is being used to access that IP address. So the issue of the fact that the two IP addresses show that there's two computers is just simply not correct. This is a dynamic IP address. It can change, and it did change in this case. And both IP addresses came back to the defendant, Michael Ramirez. Secondly, the Mr. Harris, I believe, indicated the only evidence of Michael Ramirez using the computer was a snapshot of activity. There was substantial evidence of Michael Ramirez using the computer. In addition to the snapshot of activity, as I indicated earlier, the computer is in his room. The external hard drive is in his room. His computer is being used to view images of child pornography on a number of occasions. There was significant evidence to show that it was the defendant who accessed the child pornography. It was the defendant who received and possessed the child pornography. With respect to Mr. Dunn, the Court is correct. Noah Ramirez never mentioned Mr. Dunn during the trial. He did not mention Mr. Dunn. In fact, he was asked, do you have any records to support this evidence of, you know, your brother's employment, the fact that your brother worked with you. He had no records to support it at the trial, nor were any records produced at any course of these proceedings, not when Mr. Chase asked for them in December of 2007, nor when the motion for new trial hearing took place. There was no evidence to these work records. They simply didn't exist. In addition, Noah Ramirez specifically said that he did, in fact, report the wages to EDD. However, the EDD records showed that there was no evidence of the defendant's employment. In fact, it showed that he was drawing unemployment benefits. So with respect to Mr. Dunn's — I'm sorry, Special Agent Prado, I'd like to address that. As counsel correctly indicated, we have no objection to the request to supplement the record. What I would like to point out, Your Honor, this is an anonymous letter. They're allegations only, and they're not new allegations. In fact, the allegations — Counsel? Counsel, I interrupt and ask a question. Can you tell us, at least in general terms, why the redactions? Your Honor, there is information regarding possible administrative matters that were not relevant to whether Special Agent Prado investigates cases correctly. The only evidence — and we redacted the portions that weren't relevant. In other words, the relevant evidence, at least from our perspective, was evidence that showed that maybe he had lied, evidence that showed that he had similarly — allegations that he may have similarly coerced people during the course of the execution of search warrants, during the course of interviews. So the other evidence isn't really pertinent to the case. If we should request it, would you submit this under seal to the Court? Absolutely, Your Honor. We would be happy to submit it under seal if the Court would like us to do so. And with respect to the anonymous letter, this was the exact very same basis for the motion to suppress. In fact, Mr. Chase brought up the fact that Special Agent — in the motion to suppress, the basis was Special Agent Prado used coercive police tactics. The agents were overbearing when they executed the search warrant. That is exactly what the motion to suppress was about. The district court heard the — heard the motion to suppress, and he denied that. And the motion to suppress is not being challenged here on appeal. In addition, Mr. Chase raised the exact same issues at trial. At trial, he again argued that Special Agent Prado had used coercive police tactics. And he cross-examined Special Agent Prado. He cross-examined Special Agent Finley. And he also had Michael Ramirez testify regarding these alleged coercive tactics. That, if anything, Your Honor, shows that Mr. Chase was being effective for raising these issues. We know that there would be a letter two years later, two years after the trial, and two years — three years after the execution of the search warrant making these allegations. But he certainly brought up whatever evidence he had and what he could during the course of the trial. In any event, Your Honor, again, there is no prejudice, because even though counsel speculates that even a bare-bones investigation of leads provided by the Ramirez family would have corroborated and dramatically bolstered the defense's claims, there is no evidence of that. As we sit here today, there is no showing of the leads that would have been uncovered if — that would have changed the outcome of the trial. There is no evidence of that. If, in fact, the Ramirez family had all this information showing that Special Agent Prado had committed alleged misconduct in other occasions, why didn't they follow up on it? Where is that evidence? So we would submit, Your Honor, that this is the precise type of second-guessing that is precluded by the defense. And even if — and I'd like to — even if the defense had pointed to evidence that would have assisted the trial, there's no prejudice, once again, if the evidence is overwhelming of guilt. I'm sorry. And here the evidence was overwhelming of guilt. The computer is in the defendant's room. The external hard drive is in his room. The evidence of child pornography is on the external hard drive. His brother denies accessing child pornography intentionally. He admits it. Notwithstanding his confession, those images and videos, specifically the videos, are viewed using his computer. This is overwhelming evidence of guilt. And when there's overwhelming evidence of guilt, there's prejudice. So, in addition, we have the snapshot of activity, which shows that the defendant, using his email address, using his insurance information, thereafter, accesses child pornography. So, in this case, there was no deficient performance, whether before the trial, during the trial, or at any point in the — in the case, by Mr. Chase. And, in addition, even if there had been deficient performance, which we submit there was not, there was no prejudice in this case, because there had been no evidence uncovered by counsel to show that the outcome of the trial would have been any different. And if I may ask a question. Roberts. Thank you, counsel. Thank you very much. I think Ms. Alberto just made her point. We, when she stood up and said that they had, in the suppression hearing, he made the argument that Prado was coercive. He made the argument Prado did all these police tactics that were unsavory and enforced, in fact, coercive confession. That's exactly right. That's all he did. And he did nothing to investigate to see if there was a background on Officer Prado that showed he did do these things in other cases, which apparently there are out there. And the problem we have is that he does a good job of standing up and making the argument, but does no background to investigate it. Yes, it's great that he got up and made the argument, but if there is a series of events out there where Officer Prado, in fact, she alludes to the fact that these are not new allegations. Apparently, there are some allegations out there against Officer Prado. He didn't bother to investigate it. That's what would have made it successful at the suppression hearing. It's not enough for him to get up and say this is what happened. Officer Prado gets up and says it's not. What's effective is this is a pattern of behavior that has occurred in the past. Look at this. That's what made it successful. That's what he didn't do. That's our problem here. The second point. But, counsel, not to interrupt you. Sure. You're trying to rebut, but it seemed to me that at the evidentiary hearing, Chase and his associates, Nancy Yamini and Oren Rosenthal, all testified they did, in fact, follow up on the request, and they found no helpful information. The problem with that is, Your Honor, it was proven at the – this is one of the things that the judge is referring to. He says the faulty recollection. They testified and wrote in their declarations that, in fact, they did it before the suppression hearing, that they took Noah Ramirez's list, and before the suppression hearing in November, they made those calls. They backed it up. Except what we showed at the motion for new trial was the email from Noah Ramirez stating the names and the deals didn't even come until the middle of December. It was a flat-out fabrication. When she says, for example, that, oh, he met with him several times, he fabricated that. We were able to show that conclusively at the motion for new trial. Because Michael Ramirez was on electronic monitoring. He said, oh, they came down four or five times and met with us in studio city office. The electronic monitoring office showed they met one time, which is exactly what Michael Ramirez and the family said. In addition, just so we're clear, there was evidence from Randy Dunn at the new trial. A declaration was provided from Randy Dunn saying that they did, in fact, work those hours. And, in fact, I also disagree with counsel, this was not a dynamic IP. It was a static one, we believe. That's what was shown at the evidence and what we believe is shown in their own briefs, that it was a static one. So the two IPs were, in fact, two separate computers. That's our belief on it as well. Finally, a couple of things.  He actually hired two experts. No, he hired one expert on a computer who didn't even bother to go look at the external hard drive and even Mr. Chase had to admit that was substandard. So the trial was set for December 3rd. Mr. Chase hires an expert five days before the trial starts. The expert on December 3rd hasn't even looked at the external hard drive on the day of trial, December 3rd. And yet Mr. Chase goes in and tells the court, oh, yes, I'm ready. I'm ready for trial. He hasn't even gotten the report. The expert hasn't even looked at the report at that point. Hasn't even looked at the external hard drive at that point. So to say that he had done this pretrial is absolutely incorrect. It was, once again, one other thing he hasn't done. Thank you, counsel. Thank you very much. The case is heard and will be submitted. Thank you for your arguments today. Thank you. And we will take the motion under advisement. Judge Fletcher, do you want the government to submit under seal? Usually we would confer here the document. I think I doubt it. Okay. We'll let you know whether or not we want under seal. We'll confer afterwards. Thank you very much. The next case on the oral argument calendar is Kransky and Poole v. State of Nevada. Thank you very much.
judges: Fletcher B. , Thomas, Smith R.